Matthew W. Steen, Respondent, *v.* The Niagara Fire Insurance Company, Appellant.

Defendant issued a policy of fire insurance, which limited the time for bringing an action upon it to a "term of twelve months next after the loss or damage shall occur." A loss was not payable under it until sixty days after the proofs required by it "shall have been received at the office of the company in New York, and the loss shall have been satisfactorily ascertained and proved." In an action upon the policy, *held*, that the period of limitation prescribed did not commence to run until a loss became due and payable, and the right to bring an action had accrued; and so, that an action brought within twelve months after the expiration of sixty days from the time of the loss was not barred by the limitation. *Johnson* v. *H. Ins. Co.* (91 Ill. 93; 33 Am. Rep. 47), *Fullam* v. *N. Y. U. Ins. Co.* (7 Gray, 61), disapproved.

The policy contained a condition that if the premises became vacant or unoccupied during the life of the policy, without the consent of the company indorsed thereon, it should become void. The insurance was upon a dwelling-house which was described in the policy as "occupied by a tenant for farm purposes." It became unoccupied, and that fact having been communicated to defendant's general agents, they, on the day the vacancy occurred, wrote in the policy after the words above quoted the following : "The dwelling-house being unoccupied for a short time, but being in charge of a trusty person living near by, shall be no prejudice to the policy." Vacancies also occurred after that during the life of the policy, and the house was vacant and unoccupied at the time of the fire, but whenever the house was unoccupied, it was in charge of a trusty per-

son living near, who inspected and attended to it daily. *Held,* that the words so written in did not apply solely to the then existing vacancy, but worked a modification of the original contract ; and that there was no forfeiture.

It was proved that one of the general agents, when informed that the house was again vacant, declared " that this clause upon the policy would hold good if it (the house) was unoccupied." *Held,* that the evidence was competent and that defendant was bound by the construction so given.

The policy contained a provision that " the use of general terms or any thing less than a distinct specific agreement, clearly expressed and indorsed on the policy, shall not be construed as a waiver of any printed condition or restriction therein." *Held,* that the general agents, unless specially restricted, could dispense with the condition orally as well as by writing.

*Walsh* v. *H. F. Ins. Co.* (73 N. Y. 5), *Van Allen* v. *F. J. S. Ins. Co.* (64 id. 469), and *Marvin* v. *U. L. Ins. Co.* (85 id. 278), distinguished.

The policy also contained a clause declaring that " in case of the creation of any lien, or the levy of an execution " upon " the subject insured," without the consent of the company indorsed thereon, the insurance should cease. The premises upon which was the building insured were sold on execution issued upon a judgment recovered against the insured after the issuing of the policy, they were purchased by plaintiff, and on that day defendant, by its said general agents, with notice of the judgment, execution and sale, gave consent in writing to an assignment of the policy to plaintiff, and it was so assigned. *Held,* that by the consent to the assignment, the policy became in effect a new contract between the parties unaffected by the forfeiture.

(Argued May 5, 1882 ; decided May 30, 1882.

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made February 11, 1881, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was upon a policy of fire insurance issued October 25, 1873, by the defendant, through its general agents, E. Vail & Son, to one Jonas F. Adkins, then the owner in fee of the premises upon which the insured building was situated. The policy was for the sum of one thousand dollars, and was for the term of three years. The insured building was described in the policy as follows : " On his two-story frame dwelling-house, * * * and on stoops and piazzas attached,

with shingle roof, occupied by a tenant for family dwelling."
The policy contained the following clauses.

"And the Niagara Fire Insurance Company hereby agree to
make good unto the said assured, his executors, administrators
and assigns, all such immediate loss or damage as may occur by
fire to the property specified, not exceeding the sum insured,
nor the interest of the assured in the property, except as here-
inafter provided, from the 25th day of October, 1873, at 12
o'clock, noon, to the 25th day of October, 1876, at 12 o'clock,
noon, to be paid in sixty days after the proofs required by this
company shall have been received at the office of the company
in New York, and the loss shall have been satisfactorily ascer-
tained and proved, as required by the provisions of this
policy."  *  *  *

"*Provided*, * * * if the premises are at the time of insur-
ing, or during the life of this policy, vacant, unoccupied, or not
in use, whether by the removal of the owner or occupant for any
other cause, without this company's consent is indorsed
hereon, this insurance shall be void, and of no effect."  *  *  *

"*And provided further*, * * * in case of assignment be-
fore or after a loss, whether of the whole policy or of any inter-
est in it, or of any sale, transfer or change of title in the prop-
erty insured by this company, or of any undivided interest
therein, or the entry of a foreclosure of a mortgage, or the
creation of any lien, or the levy of an execution or attachment,
or possession by another of the subject insured, without the
consent of this company indorsed hereon, this insurance shall
immediately cease."  *  *  *

"The use of general terms or any thing less than a dis-
tinct specific agreement clearly expressed and indorsed on this
policy shall not be construed as a waiver of any printed condi-
tion or restriction therein."

"It is furthermore expressly provided, that no suit or action
of any kind against this company for the recovery of any
claim upon, under or by virtue of this policy shall be sus-
tained in any court of law or chancery, unless such suit or ac-
tion shall be commenced within the term of twelve months

next after such loss or damage shall occur ; and in case any such suit or action shall be commenced against this company, after the expiration of twelve months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed conclusive evidence against the validity of the claim thereby so attempted to be enforced, any statute of limitations to the contrary notwithstanding."

About the 7th day of January, 1875, the dwelling-house in question — having been theretofore occupied by a tenant — became unoccupied, and that fact being communicated by Jonas F. Atkins to the Messrs. Vail, they wrote the following in the body of the policy, immediately after the description of the building : " The dwelling-house being unoccupied a short time, but being in charge of a trusty person living near by, shall be no prejudice to this policy, 7th of January, 1875, E. Vail & Son." In the latter part of January, it became again occupied ; and during the non-occupancy the condition required by said indorsement or writing was fully complied with.

On the 20th day of April, 1875, a judgment was recovered against the said Jonas F. Atkins, on the next day a transcript of said judgment was filed, and said judgment was duly docketed in the Ulster county clerk's office. Execution was thereupon issued to the sheriff of Ulster county, who sold the premises thereunder on the 12th day of November, 1875, to the plaintiff. On the 13th day of February, 1877, plaintiff received the usual sheriff's deed. Four days after the sale by the sheriff, Atkins informed the Messrs. Vail of such sale. Atkins then executed an assignment of the policy to plaintiff, in the form and manner prescribed by the defendant, the consent of the company to such assignment having been given in writing, by its aforesaid general agents. About the 9th of December, 1875, the person theretofore residing in the insured building moved out. A few days thereafter Atkins informed the Messrs. Vail of the fact, and was assured by one of them that " this clause upon the policy would hold good if it was unoccupied." During the interval it was again in charge of a trusty and proper person, who lived about three hundred yards distant,

and who visited, inspected and attended to it daily. On the 11th day of January, 1876, the insured dwelling-house was totally destroyed by fire, being worth at the time of its destruction a much greater sum than the amount of the policy. On the 18th day of February, 1876, due proofs of the loss were made, and on the 25th day of the same month, they were received by the company. This defendant refused to pay the loss, and this action on the policy in question was commenced by the service of a summons and complaint on defendant March 3, 1877.

*Samuel Hand* for appellant. This action cannot be maintained as it was not brought within twelve months next after the loss occurred, within the meaning of the parties, as expressed in the policy. (*Wilkinson* v. *Nat. F. Ins. Co.*, 72 N. Y. 501; *McClure* v. *Watertown Ins. Co.*, 90 Penn. St. 280.) The words "after the loss shall occur" refer to the time when the property was destroyed, and not when the claim accrued or became payable. (*Johnson* v. *Humboldt Ins. Co.*, 91 Ill. 92; *Brown* v. *Roger Williams Ins. Co.*, 7 R. I. 301; *Fullam* v. *N. Y. U. Ins. Co.*, 7 Gray, 61; *Prov. Ins. Co.* v. *Ætna Ins. Co.*, 16 Up. Can. Q. B. 135; *Schroeder* v. *Keystone Ins. Co.*, 2 Phil. [Penn.] 286; *Conaway* v. *M. Mut. Ins. Co.*, 26 La. Ann. 298; *Home Ins. Co.* v. *Nye*, 93 Ill. 271.) There being no consent to the vacancy existing when the fire took place it is fatal to recovery. (*Herman* v. *Adriatic Ins. Co.*, 85 N. Y. 162; *Van Allen* v. *The Farmers, etc., Ins. Co.*, 64 id. 469; *Walsh* v. *Hartford, etc.*, 73 id. 5; *Marvin* v. *Universal Co.*, 85 id. 278, 283.)

*A. Schoonmaker* for respondent. This action having been commenced within a year after proofs of loss were served on defendant, was begun within the time limited by the policy. (*Hay* v. *Star F. Ins. Co.*, 77 N. Y. 235; *Mayor* v. *Hamilton F. Ins. Co.*, 39 id. 46; *Chandler* v. *St. Paul F. & M. Ins. Co.*, 21 Minn. 85; 18 Am. Rep. 385; *Ames* v. *N. Y. Union Ins. Co.*, 14 N. Y. 253; *People* v. *L. L. & G.*

*Ins. Co.*, 2 T. & C. 268; *Semmes* v. *Ins. Co.*, 13 Wall. 158;
*Black* v. *Winneshiek Ins. Co.*, 31 Wis. 472; Wood on Fire
Insurance, 145; *Barber* v. *F. & M. Ins. Co. of Wheeling*,
23 Alb. L. J. 239; *Stout* v. *City F. Ins. Co.*, 12 Iowa, 371;
*Killip* v. *Putnam F. Ins. Co.*, 28 Wis. 472; *Longhurst* v.
*Conway Fire Ins. Co.*, Bates' Dig. F. Ins. 390.) The
insertion or indorsement made upon the face of the policy,
January 27, 1875, by the agents, was a continuing waiver of
the non-occupancy clause of the policy. (*Insurance Companies*
v. *Wright*, 1 Wall. 456; Wood on Fire Insurance, 124, 141;
May on Insurance, 181, 184; *Benedict* v. *Ocean Ins. Co.*,
31 N. Y. 389; *Bargett* v. *Orient Ins. Co.*, 3 Bosw. 385;
*Adams* v. *Greenwich Ins. Co.*, 9 Hun, 47; 70 N. Y.
166; *Palmer* v. *St. P. F. & M. Ins. Co.*, 18 Alb. L.
J. 136.) The consent by defendant's agent to a transfer to
plaintiff was a renewal of the policy, if it had become void by
the sale or recovery of the judgments. (*Shearman* v. *Niagara
Ins. Co.*, 46 N. Y. 526; *Hopper* v. *Hudson River F. Ins. Co.*
17 id. 424; *Carroll* v. *Charter Oak Ins. Co.*, 38 Barb. 402;
*Wolfe* v. *Security Ins. Co.*, 39 N. Y. 51; *Solme* v. *Rutgers
Ins. Co.*, 5 Abb. [N. S.] 201; *Titus* v. *Glens Falls Ins. Co.*,
81 N. Y. 410; *Keeler* v. *Niagara F. Ins. Co.*, 16 Wis. 523;
*Baley* v. *Homestead F. Ins. Co.*, 80 N. Y. 21; *Green* v.
*Homestead F. Ins. Co.*, 82 id. 517.) Plaintiff had an insurable
interest. (*Curtis* v. *Home Ins. Co.*, 1 Bissell, 485; *Ætna Ins.
Co.* v. *Miers*, 5 Sneed, 139; *Carter* v. *Humboldt Ins. Co.*, 12
Iowa, 287; *McGivney* v. *Phœnix Ins. Co.*, 1 Wend. 85; *Pel-
ton* v. *Westchester Ins. Co.*, 77 N. Y. 605; Wood on Fire
Insurance, 581.)

DANFORTH, J. On the 25th of October, 1873, the defend-
ant by its policy in writing undertook to insure James F. Atkins,
for the period of three years thereafter, against loss or damage
by fire, to the amount of $1,000 on his dwelling-house, described
as "occupied by a tenant for farm dwelling," but, immediately
following these words, there was, on the 7th of January, 1875,
written into the policy by the agents, who had by countersign-

ing given validity to it, these words : " The dwelling being un-
occupied for a short time, but being in charge of a trusty per-
son living near by, shall be no prejudice to this policy." Prior
to the 16th of November, 1875, the premises were sold by the
sheriff under an execution issued for the enforcement of a judg-
ment theretofore, but after the date of the policy, recovered
against the insured and then purchased by the plaintiff in this
action. On that day with notice of the judgment, execution
and sale, the defendant, by the agents above referred to, gave
its consent in writing to an assignment of the policy to the
purchaser, and it was assigned to him. On the 11th of Janu-
ary, 1876, the premises were injured or destroyed by fire to the
full amount of the insurance. This action was commenced on
the 3d of March, 1877, to recover the sum insured. The
policy contains certain conditions hereinafter referred to, and
the case made for the defense, and on which reliance is now
placed, depends upon the alleged omission of the insured to
comply therewith.

*First.* The contract limits the time for bringing an action
under or by virtue of the policy, to a " term of twelve months
next after the loss or damage shall occur," and declares that
" in case any such suit or action shall be commenced, * * * after
the expiration of twelve months next after such loss or damage
shall have occurred, the lapse of time shall be taken and deemed
conclusive evidence against the validity of.the claim thereby so
attempted to be enforced, any statute of limitation to the con-
trary notwithstanding." The validity of such a stipulation is
well settled ( *Wilkinson* v. *First National Fire Ins. Co.*, 72
N. Y. 499 ; 28 Am. Rep. 166 ; May on Insurance, § 478),
and in this case the question is one of construction. What was
the intention or understanding of the parties as to the time
when the limitation should begin to run ? The facts are un-
disputed, and the defendant's contention is that the words I
have quoted are to be taken literally, and that they import a
contract that no action shall be commenced after the expiration
of twelve months from the happening of the fire by which the
property insured was damaged or destroyed. On the other

hand the plaintiff has so far succeeded upon the ground that they relate to the time when a claim or cause of action accrues, on which a suit may be maintained; that no claim accrues or arises in favor of the insured upon the mere happening of the loss, nor until sixty days after the proof required by the insurers, or provided for in the policy, should have been received by them at their office in New York, and the loss satisfactorily ascertained and proved.

These events are made conditions and are certainly precedent to the maintenance of an action, and we are of the opinion that they cannot be disregarded in getting at the true understanding of the parties of the meaning of the clause in question. Indeed they seem to be the governing words of the contract. They are the words of the underwriters, intended for their protection, and qualify the general obligation to make good any loss not exceeding the sum insured or the interest of the assured in the property, by requiring preliminary proof, and a lapse even then of a fixed period before any cause of action can accrue. Except for these provisions, a suit would have lain upon the instant of the happening of the fire, or within a reasonable time thereafter.

Now if we look at the clause relied upon, we find the insurers prescribing a time after which no claim shall be brought, and a declaration that it shall not be sustainable unless commenced within " the term of twelve months," and a greater lapse of time is made " conclusive evidence against the validity of the claim then attempted to be enforced." It is plain that a " term, " or period, is indicated after which the insurers shall not be liable, and the implied meaning of the same words must be, that within that period they are or will be liable to an action. The law in case of breach of contract limits the time of bringing an action to six years. The contract substitutes twelve months. If we take the appellant's construction, the term of twelve months is at once narrowed to ten months, for sixty days at least must elapse after " a loss by fire," before any suit could be brought, and the term is subjected to such additional abatement as may be made necessary by alleged in-

adequacy of proof or controversies between the insurers and the policy-holder before such loss is " satisfactorily ascertained." The delay incident upon such provisions is illustrated by a variety of cases heretofore considered by the courts, and among others, *Ames* v. *N. Y. Union Insurance Co.* (14 N. Y. 253); *Mayor* v. *Hamilton Fire Insurance Co.* (39 id. 45); *Hay* v. *Star F. Insurance Co.* (77 id. 235; 33 Am. Rep. 607); these cases in substance hold that the time of limitation prescribed by such a contract does not commence running until the right to bring an action exists. Whether the delay is caused by extraneous circumstances, made effective by the insurer, as in the above cases, or by the provision of the policy, giving time to the insurer, before the lapse of which, payment cannot be enforced, is immaterial. The delay in either case is caused by the insurer, and until by the terms of the policy a cause of action accrues, the period of limitation against its enforcement should not, in the absence of plain and unequivocal words requiring such a construction, be deemed to commence.

Here, we think, the intention of the defendant was to give the insured a full period of twelve months, within any part of which he might commence his action, and having by postponement of the time of payment, secured itself from suit, it did not intend to embrace that period within the term after the expiration of which it could not be sued. In other words, the parties cannot be presumed to have suspended the remedy and provided for the running of the period of limitation during the same time. Indeed the actual case is stronger; not only was the remedy postponed, but the liability even did not exist at the time of the fire, nor until it was fixed and ascertained according to the provision of the policy. Having thus made the doing of certain things, and a fixed lapse of time, thereafter, conditions precedent to the bringing of an action, the parties must be deemed to have contracted in reference to a time when the insured, except for that contract, might be in condition to bring an action. Under any other construction, the two conditions are inconsistent with each other.

The cases cited by the learned counsel for the parties before

us show that the courts have differed as to the proper construction of the clause in question. In Illinois (*Johnson* v. *Humboldt Insurance Co.*, 91 Ill. 92 ; 33 Am. Rep. 47), in Massachusetts (*Fullam* v. *N. Y. Union Insurance Co.*, 7 Gray, 61), it is held to take effect from the time of the destruction of the property by the cause insured against. In Minnesota (*Chandler* v. *St. Paul F. and M. Insurance Co.*, 21 Minn. 85 ; 18 Am. Rep. 385, following, *The Mayor* v. *Hamilton Insurance Co., supra*), it is applied to the time the cause of action accrues. In Wisconsin (*Killips* v. *Putnam F. Insurance Co.*, 28 Wis. 472 ; 9 Am. Rep. 506), the court inclines to the doctrine enunciated by us in the cases before referred to. (*Ames* v. *N. Y. Union Insurance Co. ; Mayor* v. *Hamilton F. Insurance Co.*) We perceive no reason for departing from it, and adhere to the opinion that the limitation provided for by the clause in question should be construed as running from the time when the loss becomes due and payable, and not from the time when it in fact occurs. Construing these provisions of the policy together, this intention seems plain, but if there is ambiguity, the words must be construed most strongly against the appellant, who uses them, and in favor of the insured, as he might fairly have understood them (*Anderson* v. *Fitzgerald*, 4 House of Lords Cases, 484 ; *Hoffman* v. *Ætna F. Insurance Co.*, 32 N. Y. 405 ; *Reynolds* v. *Commerce F. Insurance Co.*, 47 id. 597), and so as to sustain rather than defeat the contract of indemnity. No doubt the appellant could have stipulated that the time of the fire should be looked to as the event, from the happening of which the limitation should run, but it would require distinct language to show that such was the intention of the parties. It is not used here. It is found in *Schroeder* v. *Keystone Insurance Co.* (2 Phil. 286), one of the cases cited by the appellant. Nor is the defendant's contention aided by the use of the words " loss occur " instead of " loss accrue." In *DeGrove* v. *Metropolitan Ins. Co.* (61 N. Y. 594 ; 19 Am. Rep. 305) the limitation clause was the same, and the court construed the word as synonymous with accrue, saying, " the plaintiff had twelve months from the time the cause

of action accrued," and in *Hay* v. *Star F. Insurance Co.*, the same word " occur " was used, but the court said, " the limitation should be construed to commence when the loss was due and payable, and not from the time of the physical burning of the property." There is undoubtedly a difference in the derivation and etymological meaning of the words, but as used by insurers and interpreted by the courts, they have in contracts of this kind the same signification. They represent the happening of an event from which a claim arises. Moreover, this construction accords with the general rule which regards the statute of limitations as beginning to run upon a contract of indemnity, from the time at which the plaintiff is actually damaged, and not from the happening of the event from which the loss arises.

*Second.* The policy provided that, " if the premises are, at the time of insuring or during the life of the policy, vacant, unoccupied, or not in use, whether by removal of the owner or occupant, or for any cause, without the company's consent is indorsed thereon, the insurance shall be void and of no effect." The court found that the house in question was occupied by a tenant up to about the 7th day of January, 1875, at which time it became unoccupied, and that fact being communicated by the party insured to the defendant's agents, the latter inserted the clause above referred to in the body of the policy, so as to make it a part of the contract, and also found that " the dwelling-house remained unoccupied until the latter part of January, 1875, when it was again occupied. During the non-occupancy, it was in charge of a trusty person living near by, who inspected and attended to it daily." It also appears that more than one vacancy occurred after this time, and the house was vacant and unoccupied at the time of the fire, but it continued in charge of a trusty man living near by, taking care of it and being there every day.

The learned counsel for the appellant contends that the permission written into the policy was applicable only to the then existing vacancy. This is not its necessary limitation. On the contrary it may be deemed to modify the original contract. It

is a general rule that a writing contains all that may be fairly inferred from it, and taking the condition and the permit together, they import a qualification of the prohibition of the policy against vacancy to such an extent that, although the premises are temporarily and at different times vacant, the policy shall be unaffected, provided the terms of the permit are complied with. The oversight of a trusty neighbor is made to take the place of occupancy during occasional brief vacancies, and we might as well say that the condition was not violated unless the premises were vacant " during all the life of the policy," as to say that the permit applied to, and was exhausted by, a single occasion. The object was to get rid of the restriction, and if the words are ambiguous, the observations already made upon the method of interpretation apply here. The words are not limited to a single period, and embodied as they are in the contract, the insured is entitled to a construction favorable to himself so long as it is not unreasonable.

Moreover, the court find that the general agent, when informed by the insured that the house was again empty, declared " that this clause upon the policy," evidently referring to the permit, " would hold good if it (the house) was unoccupied." This evidence was admissible, and the construction given by him binds the defendant. It is true the agent testifies to the contrary, but the conflict of evidence was for the trial court, and the question was decided as one of fact and not of law. It is therefore sustained by *Underwood* v. *Farmers' Joint-Stock Ins. Co.* (57 N. Y. 500); *Pechner* v. *Phœnix Ins. Co.* (65 id. 195); *Marcus* v. *St. Louis Mutual Life Ins. Co.* (68 id. 625). It is found as a fact that the agent making the statement was a general agent, and it was clearly within the power intrusted to him as such. It is true there is a provision that " the use of general terms, or any thing less than a distinct specific agreement clearly expressed and indorsed on the policy, shall not be construed as a waiver of any printed condition or restriction therein," but the company itself could dispense with the condition by oral consent, as well as by writing, and the general agent, unless specially restricted, could do the same. This was held in

*Walsh* v. *Hartford Fire Ins. Co.* (73 N. Y. 5). That case and others cited by the appellant, in *Van Allen* v. *Farmers' Joint-Stock Ins. Co.* (64 N. Y. 469), and *Marvin* v. *Universal L. Ins. Co.* (85 id. 278), were in favor of the defendant on the ground that by the terms of the policies in question, the power of the agent was limited, and the authority he assumed had been reserved by the company to its " officer " ( *Van Allen* v. *F. J. Stock Ins. Co., supra*); or was to be exercised only " at the head office," and authenticated by one of its officers. (*Marvin* v. *Universal, supra.*) Such reservation is not to be found in the policy before us, and the condition referred to cannot be deemed to affect one dealing with a general agent, who has original powers, co-extensive, as to the business in which he was engaged, with those of his principal.

Another defense rests upon an alleged violation of a provision of the policy declaring that "in case \* \* \* of the creation of any lien, or the levy. of an execution " upon " the subject insured, without the consent of this company indorsed hereon," the insurance secured thereby should cease. Liens by judgment and execution against the insured were obtained, but not by the consent or act of the insured. It is not necessary to consider whether or not they are within the prohibition. (*Baley* v. *Homestead Fire Ins. Co.*, 80 N. Y. 21 ; 36 Am. Rep. 570); for after notice of the judgment, and its enforcement by execution, the company, by its general agents, consented to the assignment of the policy to the plaintiff, who was the purchaser at sheriff's sale. It thus became in effect a new contract between the company and the assignee, unaffected by the forfeiture, if in any event it could have been insisted upon. (*Shearman* v. *Niagara Fire Ins. Co.*, 46 N. Y. 526 ; *Hooper* v. *Hudson River Fire Ins. Co.*, 17 id. 424.)

We have examined the other minor objections stated in the printed points of the appellant, and are of opinion that the defendant has not shown sufficient ground to sustain this appeal.

The judgment should, therefore, be affirmed.

All concur, except MILLER and TRACY, JJ., absent.

Judgment affirmed.